**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **CHICKASAW MARINE SERVICES, LLC,** ) | |
| **CHARLES R. KINZELER, and** ) | |
| **BILLY W. HANEY,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **WILLIAM JOSEPH LADNIER,** ) | |
| **GULFSTREAM PROPERTIES, LLC, and** ) | |
| **GULFSTREAM INVESTMENTS, LLC,** ) | |
| ) | |
| **Defendants,** ) | |
| _____ ) | **CIV. ACT. NO. 1:23-cv-232-TFM-C** |
| **GULFSTREAM PROPERTIES, LLC,** ) | |
| ) | |
| **Counterclaim Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **CHICKASAW MARINE SERVICES, LLC,** ) | |
| ) | |
| **Counterclaim Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are two issues: (1) the *lis pendens* notice for that was filed with the Mobile County Probate Court for the real property at issue in this matter ("the Property") and (2) whether to apply prejudgment interest to the values that were assigned by the jury for compensatory damages to Counterclaim Plaintiff Gulfstream Properties, LLC ("Gulfstream"), for Counterclaim Defendant Chickasaw Marine Services, LLC's ("CMS"), conversion of the drydock and the rental value of the Property to Gulfstream for CMS's wrongful possession of the same. Both issues were raised by Gulfstream in its counterclaim that it brings against CMS. *See* Doc. 183.

This matter was tried before a jury and, in the interest of judicial efficiency, the issues were bifurcated. The jury, first, was presented evidence and argument as to whether an oral contract existed between CMS and Gulfstream, and the jury determined there was not. Doc. 250. After the jury returned its initial verdict, it was then presented evidence and argument as to Gulfstream's counterclaims of wrongful conversion of a drydock, unjust enrichment by use of the drydock, and wrongful possession of the Property, and the attendant damages for such counterclaims. Doc. 252. The jury found CMS wrongfully converted the drydock, was unjustly enriched by its use of the drydock, and wrongfully possessed the Property, and awarded damages for each counterclaim. *Id.* The verdicts of the jury resolved many of the issues presented in this matter but left for the Court Gulfstream's requests to cancel the *lis pendens* that CMS filed against the Property and award prejudgment interest for the damages that were determined by the jury. *See* Doc. 183.

After the trial concluded, the Court entered an Order of Possession (Doc. 261), and a subsequent Amended Order of Possession (Doc. 262), in which it was ordered, primarily, Gulfstream was entitled to exclusive possession of the Property and CMS, and those associated with CMS, were directed to vacate the Property and surrender possession to Gulfstream. The Court, also, convened a telephone conference with the parties to discuss the outstanding issues in the matter: *lis pendens* and prejudgment interest. *See* Doc. 257. At the telephone conference, the parties were directed to file briefs in regard to the outstanding issues of *lis pendens* and prejudgment interest. Doc. 260. The parties timely filed separate initial briefs (Docs. 265, 266) and responses (Docs. 267, 268). The Court finds oral argument unnecessary to resolve the issues the outstanding issues of the *lis pendens* and prejudgment interest, and therefore, the issues are ripe for adjudication. The Court will address each issue in turn

**A.      *Lis Pendens***

Pursuant to Alabama law:

> Generally, the doctrine of lis pendens commences with the filing of an action and the contemporaneous recordation of a notice of lis pendens, and continues for the duration of the litigation until it is terminated by judgment and the expiration of any appropriate period for appeal, or appellate determination, if an appeal is taken.

*Ex parte Musa Props., LLC*, 386 So. 3d 14 (Ala. 2023) (internal quotation marks, alterations, emphasis, and citations omitted).

Alabama law describes when a *lis pendens* may be terminated:

> Where the action, proceeding, or levy, notice of which has been entered in the lis pendens record, shall be terminated, whether on the merits or not, the court wherein the same was pending may direct the judge of probate who has custody of the record to make such entry thereof as he shall prescribe, to give notice of the result of the action, proceeding, or levy and of the devolution of the land, and the judge of probate shall at once, on presentation thereof, file and record an entry and note the date of filing and recording on the record; provided, that where an application has been made for an order of condemnation of land, or any interest therein, the probate judge shall make such entry on his own motion. The officer or party filing such notice must, within 30 days after demand, enter on the margin of the record of the same satisfaction of such claim under the lis pendens notice whenever the same shall have been fully satisfied or terminated, and such satisfaction shall have the same effect as if made by the judge of probate as provided in this article. Nothing in this section, nor in Section 35-4-137, shall be construed to alter the form used in maintaining the lis pendens records in those counties where the public land records are, by authority of the statute law of the State of Alabama, maintained on microfilm.

ALA. CODE § 35-4-136.

Gulfstream argues it is entitled to a judgment from the Court that directs either "(a) the Mobile County Probate Judge enter in the *lis pendens* record the result of this action in favor of Gulfstream (e.g. a jury found against the Plaintiffs' specific performance claim)" or "(b) the Plaintiffs within thirty days authorize the Probate Judge to notate on the *lis pendens* notice the litigation has terminated." Doc. 265 at 3.

CMS argues the *lis pendens* may be terminated according to Ala. Code § 35-4-136 once final judgment is entered in this matter and either the time for it to seek post-judgment remedies

expires or its post-judgment remedies are exhausted.  Doc. 266 at 4.  Otherwise, CMS argues Gulfstream may terminate the *lis pendens* if it executes a bond as prescribed in Ala. Code § 35-4-137 ("When any lis pendens in an action or proceeding to enforce a lien has been filed and recorded in the office of the judge of probate, as prescribed in Sections 35-4-131 and 35-4-132, the person owning or claiming the land described in the lis pendens may at any time, before a judgment is entered enforcing the lien, nullify the notice given by such lis pendens by executing a bond with sufficient surety in double the amount of the fair market value of the land described in the lis pendens and as to which the lis pendens is to be nullified, the amount of the bond and the surety or sureties thereon to be approved by the judge of probate.").

The parties both acknowledge the same procedure to terminate the *lis pendens* pursuant to the Code of Alabama.  Accordingly, the Court will enter a judgment in this matter that directs the Mobile County Probate Judge to note this action has terminated in favor of Gulfstream and the *lis pendens* is to be terminated after the "expiration of any appropriate period for appeal, or appellate determination [that resolves in Gulfstream's favor], if an appeal is taken."  *Ex parte Musa Props., LLC*, 386 So. 3d 14.

## B.    Pre-Judgment Interest

Gulfstream argues it should be awarded prejudgment interest for its claims of conversion, trespass, and ejectment.  Doc. 265 at 4-5.  Gulfstream argues the jury found CMS converted the drydock, beginning on June 21, 2023, the same date the jury found CMS began to wrongfully possess the Property, and prejudgment interest should be applied from that date through the date the Court ordered CMS to put Gulfstream in possession of the Property, October 17, 2025.  *Id.* Further, Gulfstream argues the jury determined damages amounts for the conversion of the drydock and wrongful possession of the Property.  *Id.*

CMS argues the jury's verdict as to damages for the conversion and trespass claims shows such amounts were "neither ascertained by mere computation, nor complete at a given time so as to be capable of determination at such time in accordance with known standards of value" and, therefore, were unliquidated and not subject to prejudgment interest. Doc. 266 at 7-8. As to the fair market rental value for the Property and the fair market value for the drydock, CMS argues the jury was presented evidence by Gulfstream that was "arbitrary, speculative, unsupported hearsay-based *opinion testimony*" and opinion testimony from CMS's experts, then did not accept either opinion as conclusive and returned verdict amounts that were not aligned with the evidence. *Id.* at 8-9. Further, CMS argues the jury did not determine a date when the damages for the conversion and trespass claims were complete. *Id.*

Under Alabama law, prejudgment interest is allowed for damages for breach of contract. "The statute, [Ala. Code] § 8-8-8, allowing prejudgment interest on damages for breach of contract, has been part of Alabama law since 1852." *Lapeyrouse Grain Corp. v. Tallant*, 439 So. 2d 105, 111 (Ala. 1983) (hereinafter, "*Lapeyrouse*"). The statute reads:

> All contracts, express or implied, for the payment of money, or other thing, or for the performance of any act or duty bear interest from the day such money, or thing, estimating it at its money value, should have been paid, or such act, estimating the compensation therefor in money, performed.

ALA. CODE § 8-8-8.

Alabama common law also permits prejudgment interest under certain conditions.

> At common law, certain damages were allowable for the detention of a debt, *Vincent v. Gilmer,* 51 Ala. 387 (1874); and prejudgment interest was allowable at the legal rate in claims other than those contractual in nature where the unliquidated damages could be ascertained by mere computation, or where the damages are complete at a given time so as to be capable of determination at such time in accordance with known standards of value. For two cases applying the common law rule, *see Glidden v. Street,* 68 Ala. 600 (1881) (disallowing prejudgment interest for nonspecific damages for trespass to land); and *Atlanta & Birmingham*

*A.L. Ry. Co. v. Brown,* 158 Ala. 607, 48 So. 73 (1908) (allowing prejudgment interest for negligent damage to crops).

*Lapeyrouse*, 439 So. 2d at 111-12.

The Alabama Supreme Court summarized its decision in *Lapeyrouse* as follows:

In *Lapeyrouse*, a group of farmers sued a grain company for breach of contract, conversion, and fraud, alleging that they had delivered their grain to the company in reliance on an agreement whereby they were to be allowed to select the date on which the grain would be sold. The purpose of this agreement was to allow the farmers to profit from a rise in the fluctuating commodities market. Following the grain company's decision to sell the grain without their consent, the farmers sued and obtained a $20,000 judgment, based on a general jury verdict. One of the issues on appeal was whether the farmers were entitled to prejudgment interest. Although the farmers' damages were not finally determined until the jury returned its verdict, this Court held:

> "[T]he . . . damages aspect of the tort rule does not prevent prejudgment interest here, because of the ease and certainty with which those damages can be ascertained. Once the jury reached a factual conclusion from the evidence as to the price differential, the compensatory loss could be fixed by a simple mathematical computation, as was the case in *Atlanta v. Birmingham A.L. Ry. Co., supra.*"

439 So. 2d at 112. *See, also, Braswell v. Conagra, Inc.,* 936 F.2d 1169 (11th Cir.1991) (applying Alabama law).

*Nelson v. AmSouth Bank, N.A.*, 622 So. 2d 894, 896 (Ala. 1993).

The claims and counterclaims in this matter were based on an alleged oral contract between the parties. The evidence that was presented at trial showed the parties engaged in discussions to purchase the Property, which was to be used to operate a business. There were discussions about how the business would be structured as well about how title to the Property would be transferred to the business operators. As part of the business that would be operated at the Property, Gulfstream purchased a drydock that was transported to the Property and used by CMS while it was docked at the Property. Ultimately, the negotiations between the parties to operate a business together on the Property unraveled, and Gulfstream opted to retain title to the Property and lease

it to CMS.  CMS refused to lease the Property, and instead, opted to file suit to enforce the purported agreement for CMS to purchase the Property.

The jury returned its verdicts, as described above, and assigned damages against CMS for Gulfstream's claims of conversion, unjust enrichment, and wrongful possession.  Notably, the jury explicitly found the date on which CMS began to wrongfully possess the Property, June 21, 2023, but did not find a date on which CMS converted the drydock.  Doc. 252.  Gulfstream argues the date the drydock was converted should be the same date that the jury found CMS began to wrongfully possess the Property.  Doc. 265 at 4.  However, the conversion date of the drydock is uncertain, since the jury did not make such a finding and because of the nature of this matter-a potential business arrangement to convey real property based on oral representations that unfolded over a period of time-and the Court declines to independently make such a factual finding.  Therefore, the Court finds prejudgment interest should be awarded for Gulfstream's claim of wrongful possession, since the date on which the act occurred and the value of the damages is certain based on the jury's findings, but prejudgment interest should not be awarded for Gulfstream's claim of conversion, since the date on which the act occurred is not readily discernible.

Accordingly, in the final judgment that the Court will enter in this matter, the Court will award prejudgment interest at the statutory rate for Gulfstream's claim of wrongful possession but declines to award such interest for its claim of conversion.

**DONE** and **ORDERED** this 29th day of January 2026.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE